IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 22, 2005 Session

## STATE OF TENNESSEE v. DAVID WAYNE FOUNTAIN

**Appeal from the Circuit Court for Rhea County**
**No. 15622      Thomas W. Graham, Judge**

_____

**No. E2004-01226-CCA-R3-CD - June 28, 2005**

_____

The defendant, David Wayne Fountain, appeals from the Rhea County Circuit Court's revocation of his probation. Because the record supports the revocation of probation, we affirm the revocation; however, to avoid a length of confinement that exceeds the defendant's release eligibility as a Range I offender, we modify the post-revocation terms of the manner of service of the defendant's two-year sentence.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed as Modified.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Larry G. Roddy, Sale Creek, Tennessee, for the Appellant, David Wayne Fountain.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Jim Pope, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On May 3, 2002, the trial court accepted the defendant's blind guilty plea to attempt to commit theft of property valued in excess of $1,000, a Class E felony, and the court entered judgment sentencing the defendant to a Range I sentence of two years, to be served via four months in confinement and the balance of the sentence on probation. Following an unsuccessful appeal of his sentence, the defendant served his confinement in the Rhea County jail from September 8, 2003 to October 13, 2003.[1]

_____

[1] This court's opinion affirming the defendant's sentence contains a summary of the offense that resulted in the conviction:

(continued...)

On March 10, 2004, the state filed a probation violation report, alleging that the defendant failed to report to his probation officer following his release from custody, failed to inform his probation officer of his change of address, failed to complete 100 hours of community service, and failed to pay fines, restitution and costs totaling $1,190. The report further alleged that the defendant was in Calhoun County, Arkansas.

On May 7, 2004, the trial court entered an order revoking the defendant's probation and ordered him to serve an additional 12 months in confinement, followed by two years' probation.

In his timely appeal, the defendant claims that the decision to revoke probation was unsupported by sufficient evidence. Specifically, the defendant claims that his failure to report following his four months' confinement resulted from the probation office's failure to inform him of the need to report.

In the probation revocation hearing, Tim Hickey testified that he became a probation officer after the defendant had been prematurely released from jail. Mr. Hickey testified that the defendant failed to report to anyone in the probation office following his release from jail on October 13, 2003. Mr. Hickey testified that, in fact, he was unaware that the defendant had been released from the Rhea County jail until he received a call from an Arkansas sheriff's office informing him that the defendant was in that state. Mr. Hickey testified that no one gave the defendant permission to go to Arkansas.

Mr. Hickey testified that, prior to the filing of the revocation report, the defendant had paid none of his fines, restitution, or costs and had fulfilled none of the community service required as a condition of his probation. After the state filed the revocation report, the defendant paid his

---

[1](...continued)

> The defendant came to East Tennessee as a member of a Christian singing group. In this capacity, he performed in a church attended by the victim. He befriended the victim and her daughter. Some months after they first became acquainted, the defendant told the victim that he was raising money for a hospitalized child's medical treatment. He claimed that he had personally donated $200,000 to the cause, and he asked the victim for $6,000 so that the child could receive a liver transplant. He named two hospitals at which the child had been treated. The victim checked with both hospitals, and she was advised that no child by the name she had been given by the defendant had ever been a patient at either facility. The victim contacted law enforcement officials, and an undercover operation was planned whereby an agent from the Tennessee Bureau of Investigation would pose as a minister and accompany the victim in delivering the requested funds to the defendant. This ruse took place, after which the defendant was arrested. It was later determined that the bank account that the defendant had identified to the victim as the location to which the funds would be deposited was in the name of the defendant's live-in girlfriend.

*State v. David Fountain*, No. E2002-01066-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Knoxville, Apr. 22, 2003), *perm. app. denied* (Tenn. 2003).

financial obligations to the court by mail. Mr. Hickey testified that the defendant returned to Tennessee but performed none of his community service hours. Upon his return, the trial court ordered the defendant to serve the remainder of his original four-month confinement.

On cross-examination, Mr. Hickey testified that the probation office had no records to indicate that anyone had contacted the defendant at any time following his conviction. Indeed, no file on the case had been opened in the probation office until near the time of the revocation proceedings, and Mr. Hickey was unaware that the defendant was a probationer on Mr. Hickey's caseload until after the call from the Arkansas sheriff. Mr. Hickey was also unaware whether anyone in the probation office had informed the defendant of the rules of his probation. He testified that, when probation is preceded by a term of confinement, someone from the probation office usually contacts the prisoner while he is in jail, but no record of such a contact exists in the defendant's case. Mr. Hickey agreed that, when a defendant is taxed with costs and other payments, the defendant is expected to contact the clerk's office to arrange payment. Typically, no bill of costs is sent to the defendant by the probation office, but Mr. Hickey did not know whether a bill would have been sent by the clerk's office.

Mr. Hickey agreed that, upon being advised of his obligations in Tennessee, the defendant voluntarily returned to Rhea County from Arkansas.

Through his counsel, the defendant introduced portions of the transcript from the sentencing hearing. The transcript revealed that defense counsel stated that the defendant would need to fulfill his requirement of community service in Texas, and the trial judge approved supervision of the requirement in Texas, subject to the responsibility being accepted in that state. The transcript indicated that the trial judge added, "I'm sure if that's where he's going to live[,] his probation will be down there."

The defendant testified in the revocation hearing that, when he was released from his original confinement after serving only 40 days, he believed that he had completed his 120-day confinement upon serving 30 percent of the term. He testified that, following his conviction, no one told him to contact the probation office and that no one from the office contacted him. He testified that he performed his community service work on his own while in Arkansas, doing "[h]ome repairs, yard repairs, and [work with] different law enforcement agencies working with juveniles and also with some adult cases." He received no billing for costs, fine, and restitution, and that following the filing of the revocation report, he paid the amounts due and returned to Tennessee. He then served the balance of the 120-day confinement term, with credit for "good time."

On cross-examination, the defendant denied that he had talked the jailer into releasing him in October 2003 after serving 40 days. He testified that he asked the jailers whether "there [was] anything else that [I] needed to do and I was told three times, no, that I had served my time and that I was being released and . . . could go." One of the jailers with whom he spoke, Jeff Knight, had been a probation officer before assuming duties as a jailer. The defendant testified that, following

-3-

his release, he went to his home in Texas. After working with a minister in Texas for six or seven months, the defendant moved to Arkansas as part of an "outreach" ministry.

The state sought to impeach the defendant on cross-examination by asking him about the basis of a civil complaint filed against him in Arkansas. The defendant admitted that, while he was in Arkansas, a woman paid $91,000 to purchase a motor home for him. Although the defendant denied misrepresenting anything to this benefactor, he acknowledged that she later claimed that he had defrauded her and claimed that he had promised that, if she affiliated with his evangelical crusades, "she would meet a wealthy husband . . . and . . . would not need these funds any more."

After the defendant testified, the court allowed the state to call Jeff Knight as a witness. He testified that he was a probation officer at the time the defendant's sentence was imposed and that he began serving as a jailer by the time the defendant was confined following his appeal. He testified generally that, on the day of sentencing, a defendant should be instructed to check in with the probation officer. Although Mr. Knight was present in court when the defendant was sentenced, he did not recall, however, getting any information from him at that time. He denied that he told the defendant at the time of his release that he had no other obligations in the case. Mr. Knight testified that he told the defendant, "[B]efore he left he needed to make sure that he contacted the probation office to see if there is any paperwork they . . . needed to get signed by him."

Next, the defendant's mother testified in his behalf that, in the courtroom following the sentencing hearing, no one spoke to the defendant about reporting for probation. She testified that the defendant's mail came to her home in Milan, Tennessee, because he traveled so much. She received neither any bills of costs from the trial court clerk nor any correspondence from the probation office.

Jeff Carter testified that, while in Arkansas with him, the defendant spent "a couple hundred hours" helping street people with sleeping accommodations and food.

After hearing the testimony and argument of counsel, the trial court made extensive findings. The court accredited the testimony of Jeff Knight and found that "Mr. Fountain is a person [who] . . . is not truthful." Essentially, the court found that the defendant was accountable for his obligation to fulfill the conditions of probation and rejected the claim that he was diverted from his obligation by Mr. Knight. The court revoked the defendant's probation and ordered him to serve one year *in addition to* the four months previously served. The court ordered that supervised probation continue for two years following the confinement.

The standard of review upon appeal of an order revoking probation is the abuse of discretion standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). In order for an abuse of discretion to occur, the reviewing court must find that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the terms of probation has occurred. *Id.*; *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The trial court is required only to find that the violation of probation occurred by a preponderance of the evidence. Tenn. Code

Ann. § 40-35-311(e) (2003). Upon finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered." *Id.* Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." *Id.* § 40-35-310. The trial judge retains the discretionary authority to order the defendant to serve the original sentence. *See State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995).

In the present case, substantial evidence supports the trial court's conclusion that the defendant violated the terms of his probation by his failing to report for supervision. The trial court's determinations that Mr. Knight testified truthfully and that the defendant did not testify truthfully dispose of the claim on appellate review that state agents misdirected the defendant into leaving Tennessee without contacting the probation office. Thus, we affirm the court's decision to revoke the defendant's probation.

That said, we must, however, modify the terms of the manner of service of the two-year sentence that was imposed upon revocation. This court has consistently held that a confinement term may not exceed the release eligibility date for felony sentences of two years or less. *See, e.g., Jonathan Thornton v. State*, No. E2003-00393-CCA-R8-PC, slip op. at 3 (Tenn. Crim. App., Knoxville, Mar. 17, 2003); *State v. Stephen Michael Ware*, No. E2000-01952-CCA-R3-CD, slip op. at 4-5 (Tenn. Crim. App., Knoxville, Aug. 7, 2001); *State v. John W. Hill*, No. 01C01-9802-CC-00072, slip op. 4-5 (Tenn. Crim. App., Nashville, Feb. 25, 1999); *see also* Tenn. Code Ann. § 40-35-501(a)(3) (2003). The release eligibility date for a Range I, standard offender receiving a two-year sentence is 219 days, less certain sentence credits. *See John W. Hill*, slip op. at 5. In the present case, the Range I defendant had previously served 120 days of the two-year sentence, less sentence credits. Thus, the trial court had authority to order further confinement for only up to 99 additional days.

Accordingly, the judgment of the trial court is affirmed but modified; the confinement term of the sentence upon revocation is modified to 99 days. The defendant shall remain on supervised probation for a period of two years following his release from confinement. *See* Tenn. Code Ann. § 40-35-303(c) (2003).

_____
JAMES CURWOOD WITT, JR., JUDGE